IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

LOUCINDA K. DAVIS                                                                      PLAINTIFF

V.                                   NO. 14-5208

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Loucinda K. Davis, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI) under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.   Procedural Background:**

Plaintiff filed her current application for SSI on June 28, 2012, alleging an inability to work since May 31, 2012, due to chronic back pain, HTN, kidney failure, hepatitis, systemic inflammatory response syndrome (SIRS), chronic shoulder pain, diabetes, depression, morbid obesity, and gout. (Tr. 150-159, 174, 177). An administrative hearing was held on July 30, 2013, at which Plaintiff appeared with counsel and testified. (Tr. 24-46).

By written decision dated August 23, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – obesity; chronic obstructive pulmonary disease (COPD); calcified tendonitis of left shoulder; hypertension; chronic kidney disease; and SIRS. (Tr. 13). However, after reviewing all of

1

the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 416.967(a) except she can do no overhead reaching with the left upper extremity and she must avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation.

(Tr. 14). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff was unable to perform any past relevant work, but there were other jobs Plaintiff would be able to perform, such as telephone solicitor, appointment clerk, and clerical jobs. (Tr. 18).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on May 29, 2014. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 11). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 13, 14).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a

reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the

3

impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

### III.  Discussion:

Plaintiff presents the following arguments in this matter:  1) Whether the ALJ fully and fairly developed the record; 2) Whether the ALJ's RFC determination is inconsistent with the record; and 3) Whether the ALJ erred in his Step 5 determination. (Doc. 13).

#### A.   Whether the ALJ Fully and Fairly Developed the Record:

The ALJ has a duty to fully and fairly develop the record.  See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995);  Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000).  This is particularly true when Plaintiff is not represented by counsel.  Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994).  This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary.  See 20 C.F.R. § 404.1512.  The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case.  Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010).  However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record.  See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment.  They simply grant the ALJ the authority to do so if the existing

4

medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989).  "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." Mans v. Colvin, No.  13-CV-2103, 2014 WL 3689797 at *4 (W.D. Ark., July 24, 2014)(quoting Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

Plaintiff argues that the ALJ should have contacted her treating physicians for more information about her mental health functioning.  She also argues that the ALJ should have contacted her treating sources, particularly the nephrologist who treated her in the hospital, to determine how her repeated episodes of kidney failure and her SIRS would impact her work functioning.

Plaintiff was hospitalized on May 31, 2012, with breathing problems, and upon discharge on June 19, 2012, was diagnosed with: acute community-acquired lingular pneumonia; calcific tendonitis of her left shoulder; acute kidney injury, requiring dialysis; COPD; and persistent leukocytosis. (Tr. 232, 237).  On August 21, 2012, Plaintiff established care at Good Samaritan Clinic, with concerns regarding her recent hospitalization for pneumonia and acute renal failure. (Tr. 306). Plaintiff had not been able to continue follow up after her hospital discharge. (Tr. 306).  She was assessed with recent hospitalization for acute renal failure – pneumonia- condition improving; HTN; morbid obesity; and anxiety. (Tr. 306).

On August 30, 2012, Dr. Michael R. Westbrook conducted a General Physical Examination, and found that the ranges of motion of Plaintiff's extremities were within normal limits; her gait and coordination were within normal limits; she was able to perform

5

all limb functions except she was unable to walk on her heels, had poor balance, and could not squat/arise from a squatting position because it was too painful. (Tr. 296). She had 100% grip in both hands. (Tr. 296). Dr. Westbrook found that Plaintiff had "moderate" limitations in her ability to "walk, stand, sit, lift, carry, handle, finger, see, hear or speak, etc." (Tr. 298).

In an August 31, 2012 Disability Determination Explanation, a Physical RFC Assessment was included, completed by Dr. Dan Gardner. (Tr. 54-56). He found Plaintiff could perform light work, but should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation, etc. He also concluded that the objective medical evidence alone did not reasonably substantiate Plaintiff's allegations about the intensity, persistence and functionally limiting effects of the symptoms, and that considering the total medical and non-medical evidence in the file, Plaintiff's statements regarding symptoms were considered partially credible. (Tr. 56).

By October 16, 2012, Plaintiff was no longer requiring dialysis, but continued to have chronic pain in her back and shoulders, and became short of breath when walking any distance. (Tr. 207).

By report dated November 8, 2012, Melissa F. Jackson, Ph.D., found Plaintiff to have mild limitation in activities of daily living and in maintaining social functioning, and no difficulties in maintaining concentration, persistence or pace, and had no repeated episodes of decompensation. (Tr. 66). Plaintiff's anxiety –related disorders were found to be non-severe. (Tr. 66).

On March 8, 2013, Dr. Martha K. Morgan, of Boston Mountain Rural Health Clinic, reported that Plaintiff had been working on losing weight and had lost 60 pounds, and was

feeling much better. (Tr. 440). Plaintiff asked if she could increase her Zoloft, because she was taking 50 mg. and it was reportedly helping, but not quite enough. (Tr. 440). At that time, Plaintiff was assessed with bronchopneumonia, organism unspecified; acute renal failure with other specified pathological lesion in kidney; and HTN. (Tr. 442). On March 12, 2013, Dr. Morgan reviewed a low fat diet with Plaintiff, and reported that her renal function looked good. Plaintiff reported that she was having no symptoms and felt good. (Tr. 414). On August 18, 2013, Plaintiff again saw Dr. Morgan and reported that her increased dosage of Zoloft to 100 mg. had good results, and she wanted to continue with that dosage. (Tr. 434). Plaintiff was also working on increasing her exercise. (Tr. 434). Plaintiff was assessed at that time with HTN; acute renal failure with other specified pathological lesion in kidney; and depression/major depressive disorder, single episode, unspecified. (Tr. 4360.

On May 30, 2013, Plaintiff saw Dr. Morgan, complaining of a cough, and Dr. Morgan assessed her with cough and abnormal lab – hematology. (Tr. 425). Plaintiff was educated on diet and nutrition as well as exercise and how she would benefit from all three. (Tr. 425). On July 19, 2013, Plaintiff again saw Dr. Morgan for a check up, and complained that her cough kept coming back every three months. (Tr. 420). Dr. Morgan assessed Plaintiff with acute bronchitis and seasonal allergies. (Tr. 420).

Plaintiff reported in her Function Report – Adult, dated July 13, 2012, that she was able to clean, read, prepare herself lunch, watch television, prepare dinner, get on her exercise bicycle, had no problem with personal care, vacuumed, swept, dusted, washed dishes, did laundry, shopped in stores for food and household supplies weekly, and spent time with others over the phone. (Tr. 194-198). Plaintiff testified at the hearing that she had problems with frequently going to the bathroom, depending upon the stress. (Tr. 30). She

7

testified that she was 5'5" and weighed 369 pounds. (Tr. 33). She also reported that she had gout at one time, but that she had not had a problem with it for some time. (Tr. 39).

In his decision, the ALJ found that Plaintiff's mental impairment of anxiety was non-severe, and considered and discussed the four broad functional areas relevant in evaluating mental disorders. (Tr. 13).  It is clear from the record that there was sufficient information before the ALJ for him to make a determination regarding Plaintiff's alleged mental impairments.  In fact, it was Plaintiff's treating physician, Dr. Morgan, who reported on April 18, 2013, that Plaintiff had "good results" with her increased dosage of Zoloft, and Plaintiff wanted to continue with that dosage. (Tr. 434).  The Court finds the ALJ fully and fairly developed the record regarding Plaintiff's mental limitations.

Regarding Plaintiff's kidney function, although Plaintiff suffered from chronic kidney failure, as of March 12, 2013, Dr. Morgan reported Plaintiff's renal function "looks good." (Tr. 413).  In addition, Plaintiff's treating physicians placed no functional restrictions on Plaintiff's ability to work.  The Court finds there was sufficient information before the ALJ for him to make a determination regarding Plaintiff's physical impairments.

### B.      Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical

evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In the present case, the ALJ considered and discussed Plaintiff's daily activities, her subjective complaints of pain, the effectiveness of her medications, and her functional restrictions, and the Court finds there is substantial evidence to support the ALJ's credibility findings.

### C. RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

9

Plaintiff refers to Dr. Westbrook's conclusion in his August 30, 2012 report that Plaintiff had "moderate" limitations, in response to the question of whether there were any limitations in Plaintiff's ability to walk, stand, sit, lift, carry, handle, finger, see, hear or speak. (Tr. 298). Plaintiff argues that because Dr. Westbrook found her moderately limited in her ability to sit, the fact that sedentary work[1] requires 6 hours of sitting would preclude Plaintiff from performing sedentary work. However, a review of Dr. Westbrook's entire examination record reveals that Plaintiff's ranges of motion of her extremities and cervical and lumbar spine were within normal limits, her gait and coordination were within normal limits, she could perform all limb functions, except she was unable to walk on her heels, and she could not squat/arise from a squatting position. (Tr. 296). In addition, there is no objective medical evidence to support Plaintiff's contention that she is unable to sit for six hours in an eight hour workday.

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's RFC determination.

### D.     Step 5 Determination:

Plaintiff argues that the hypothetical question posed to the VE was incomplete because it did not include the limitations of Plaintiff needing extra bathroom breaks or being unable to sit, stand, and walk for eight hours a day. After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794

---

[1] Sedentary work involves lifting no more than 10 pounds at a time, no more than 2 hours of walking and standing a day, and 6 hours of sitting a day with a morning break, a lunch period, and an afternoon break at approximately 2 hour intervals. 20 C.F.R. §404.1567(a); SSR 83-10; SSR 96-9p.

(8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing such jobs as telephone solicitor, appointment clerk, and clerical jobs. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### IV.   Conclusion:

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed.  The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 7th day of July, 2015.


*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE